Pollock, J.
The plaintiff in error, Eliza Simms, began an action in the court of common pleas of this county against the defendant in error, alleging in her petition that the defendant was operating an electric railroad from the city of Alliance to the village .of Sebring; that the plaintiff’s intestate, at the time alleged, purchased a ticket and became a passenger on one of defendant’s *265 car's, intending to ride from the city of Alliance to Sebring; and that he was unlawfully ejected from the car by the conductor at a stop on defendant’s road, known as No. 47. She further alleges that at the time Arthur Simms was ejected from defendant’s car he was intoxicated, and by reason thereof was stupid and bereft of intelligence and unable to take care of himself, which was known to the conductor of defendant’s car at the time he was ejected; that it was in the night time, and that there was no direct road from the stop where he was ejected to Simms’s home except along the line of defendant’s railway, where cars were passing frequently at a high and dangerous rate of speed; and that shortly after Simms was ejected from defendant’s car he was struck and killed by another car of the defendant company. She asked damages for negligently causing the death of her intestate.
An answer was filed denying the acts of negligence and alleging that Arthur Simms was guilty of contributory negligence in going upon the private right of way of defendant company.
The evidence adduced at the trial in the court below shows that Arthur Simms took passage on one of defendant’s cars at the time alleged, standing on the back platform; that he was intoxicated, and when asked for his fare or ticket he insisted he had a ticket but could not find it. The conductor left him standing on the platform, and when the car stopped to discharge and receive passengers at the station known as No. 47 the conductor again approached him for his fare, and as Simms did not produce his ticket or offer to pay his fare the conductor told him he would have to leave the *266 car. Thereupon he left the car, which proceeded on its journey, leaving Simms standing at the side of the track.
This stop was on a public highway which crossed the tracks of defendant company at right angles, and was a regular stop on defendant’s railroad for discharging and receiving passengers. Shortly afterwards the deceased was found lying on defendant’s track a short distance east of the spot where he was ejected. He had been struck by one of defendant’s cars and injured so that he died shortly thereafter. From stop No. 47, on the public highway, east to the point where Simms was struck and killed was the private right of way of the defendant company.
On the trial of the case, the court, at the close of the argument, without being requested by either party, submitted five written interrogatories to the jury, with instruction that if they returned a general verdict to return written findings of facts thereto. The jury retired, and afterwards returned a general verdict for the plaintiff, and therewith returned answers to the interrogatories submitted by the court.
Upon motion of the plaintiff, the court refused to enter judgment on the general verdict; but upon motion of defendant gave judgment for defendant on the findings of facts contained in the answers to the interrogatories.
The plaintiff claims that the court erred in entering judgment for the defendant upon the findings of the jury to the interrogatories submitted by the court, and in refusing to give judgment on the general verdict, for the reason that the court is *267 without authority to require the jury to find specially on particular questions of fact except upon request of a party.
Section 11458, General Code, provides that the verdict of a jury must be either general or special. The next section defines a general verdict, and the following section defines a special verdict. Section 11461 provides that unless otherwise directed by the court the jury may render either a general or a' special verdict, and the section following requires the court, on request of either party, to direct the jury to return a special verdict.
We see that under the provisions of Section 11461 the kind of a verdict the jury shall return, whether special or general, does not depend alone upon the request of the parties or the will of the jury, but that the court may direct the jury to render either a special or general verdict. Section 11463 provides that upon request of either party the court shall instruct the jury, if it returns a general verdict, specifically to find upon particular questions of fact, to be stated in writing, and shall direct a written finding thereon.
This is usually done by submitting to the jury written interrogatories, and directing that if they shall find a general verdict they shall make written findings upon them. The next section provides that if the special finding of facts is inconsistent with the general verdict the former shall control.
The plaintiff in error insists that the court cannot, except upon a request of one of the parties, require the jury to return with the general verdict specific findings upon proper questions of fact in accordance with the provisions of Section 11463, *268 General Code, and, if the special finding of facts by the jury is inconsistent with the general verdict, enter a judgment upon the special finding of facts, in accordance with the provisions of Section 11464 of the General Code.
It is evident from a reference to Section 11463, General Code, above referred to, that the statute under which the court directs a jury to return with the general verdict a special finding of facts does not specifically provide for the court making such direction upon its own motion, so that if it was not error For the court to do so it must be because of the inherent power of the court to direct and control the procedure in the trial of a case.
We find from an examination of the legal history of the English jury law that the jury had a right to return either a general or a special verdict, and the court had no power over the jury to control the form of verdict. (3 Blackstone’s Commentaries, 377.) This right does not seem to have been accorded to the jury by the courts of this country, or at least the jury has not exercised this privilege. The right of the court to inquire of the jury in regard to its acts while in the jury room considering the case, after its submission to the jury, was recognized by the supreme court. of Massachusetts in Hix v. Drury, 5 Pick., 296.
The practice became common for the trial court to interrogate the jury at the time they returned their general verdict in regard to the grounds on which it was founded, or the court could require them to return with their general verdict a finding as to certain facts, the existence of which were material in determining the rights between the *269 parties. This was done upon direction of the court under its discretionary power, for the purpose of enabling the court to determine the materiality of the question upon which the jury based their verdict. Lawler v. Earle, 5 Allen (Mass.), 22; Spoor v. Spooner, 12 Met. (Mass.), 281; McMasters et al. v. West Chester Ins. Co., 25 Wend., 379, 381; Smith v. Putney, 18 Me., 87, 91, and Walker v. Sawyer, 13 N. H., 191, 196.
The practice was within the discretion of the court and could be exercised by it even against the objection of both parties. Spurr v. Shelburne, 131 Mass., 429; Barstow v. Sprague, 40 N. H., 27, and Walker v. Bailey, 65 Me., 354.
When these special findings were irreconcilably inconsistent with the general verdict, or the answers to the interrogatories showed that the verdict was founded upon unsubstantial grounds or a misconception of the case, the verdict was set aside. 28 Am. & Eng. Ency. Law (1 ed.), 397; Richardson v. Weare, 62 N. H., 80; Pierce v. Woodward, 6 Pick., 206, and Parrott v. Thacher, 9 Pick., 426.
Many of the states now have statutory provisions, similar to those of this state, requiring the court on the request of the parties to direct the jury to find specifically upon particular questions of fact, and return their findings of facts with the general verdict. These statutory provisions do not affect the discretionary power of the court to require the jury to return with the general verdict findings of certain facts, which power’ had been recognized by the court before the enactment of the statute, but only extended the right to the parties to demand their submission. Both are in *270 the interest of justice, in order to determine whether the general verdict of the jury is based upon the real issues joined in the action. The trial court should have power equal with that of the attorneys to direct the procedure in the trial of a cause before it.
The right of the court upon its own initiative to require the jury to return specific findings of facts with a general verdict has been affirmed in a number of states having statutory provisions giving to either party the right to request the court to direct a jury to make such findings and return them with their general verdict.
Those returned by direction of the court will have the same effect upon the general verdict as those submitted by request of the parties. 2 Thompson on Trials (2 ed.), Section 2673.
The statute, Section 11463, was^adopted from the statute of Indiana on the same subject, and the presumption is that it was adopted with reference to the construction placed upon the Indiana statute by the courts of that state. Gale v. Priddy, 66 Ohio St., 400, 405.
The supreme court of that state has held that under their statute, the trial court had the right to submit interrogatories to the jury to be answered by it in case a general verdict is returned.
“The court may, of its own motion, propound to the jury interrogatories to be returned with the general verdict.” Senhenn v. City of Evansville, 40 N. E. Rep., 69 (140 Ind., 675); Killian et al. v. Eigenmann, 57 Ind., 480; Louisville, N. A. & C. Ry. Co. v. Worley, 107 Ind., 320, 7 N. E. Rep., *271 215, and Halstead v. Woods, 48 Ind. App., 127, 95 N. E. Rep., 429.
We think, in the instant case, the court did not err in submitting to the jury these interrogatories, but was within the discretionary right of the court.
An examination of these interrogatories shows that they were all, except the first and fourth, subject to the objection that they were not findings of facts alone, but mixed findings of fact and law. The Brier Hill Steel Co. v. Ianakis, 93 Ohio St., 300.
The fourth interrogatory and its answer are not material to any issue in the case.
The first interrogatory and its answer read as follows:
“State, if possible, the nature and extent of decedent’s intoxication? A. He was intoxicated but not to the extent that he did not know what he was doing at the time of getting off of the car.”
We have examined the evidence in this case, and, while the decedent was under the influence of intoxicating liquor at the time he boarded and remained on defendant’s car, yet there was nothing in his conduct that would indicate or notify the conductor of defendant company that he was in a helpless condition, or in fact was not in a condition to know where he was and his surroundings and to fully care for himself.
We think that the answer of the jury to this interrogatory is fully justified by the evidence.
He was asked to leave the car because he had not paid his fare. He said he had a ticket, but neither produced the ticket nor offered to pay his fare in case he could not find it; and when re *272 quested to leave the car he did so. He was requested to leave the car and did leave the car at a regular stop of the defendant company for discharging and receiving passengers, and where other passengers were alighting from the car. After this he went upon the private right of way of the defendant company, and was there struck and so injured by another car of defendant company that he died. There is no testimony tending to prove that defendant’s employes, in charge of the car which actually inflicted the injury that caused the death of plaintiff’s intestate, were in any way negligent. An electric railroad company operating its cars in the open country is not negligent in requiring an intoxicated man to leave its car in the night time, for the nonpayment of his fare, at a regular stop for discharging and receiving passengers on a public highway, when he, although noticeably intoxicated, was able to walk and talk intelligently. 4 Elliott on Railroads (2 ed.), Section 1637; Roseman, Admr., v. Carolina Cent. Rd. Co., 112 N. C., 709, 16 S. E. Rep., 766, 19 L. R. A., 327, 34 Am. St. Rep., 524; Korn v. C. & O. Ry. Co., 125 Fed. Rep., 897, 63 L. R. A., 872; Bageard v. Consol. Traction Co., 64 N. J. L., 316; Smith v. Norfolk & So. Rd. Co., 114 N. C., 728, 25 L. R. A., 287, and Woods v. Commissioners, 128 Ind., 289, 291.
The railroad company was not required to anticipate that any injury would result to plaintiff’s intestate from its requiring him to leave the car at this place after a failure to pay his fare.
After a full consideration of all the evidence we think the judgment of the'court below is manifestly *273 right, and for that reason we are not authorized to reverse the judgment.
The judgment of the court below is affirmed.

Judgment affirmed.

Metcalfe, J., concurs.
Spence, J., dissents.